[Crim. No. 4037. Second Dist., Div. Two. Dec. 12, 1946.]

THE PEOPLE, Respondent, v. ORVILLE AHSBAHS, Appellant.

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, and Laughlin E. Waters, Deputy Attorney General, for Respondent.

WILSON, J.—Appellant was charged with the violation of section 288 of the Penal Code in that he committed a lewd and lascivious act upon a girl thirteen years of age, "by then and there touching, rubbing, fondling and feeling the body, members and private parts thereof of" the prosecutrix "with intent then and there of arousing, appealing to and gratifying the lusts, passions and sexual desires of" the prosecutrix and appellant. At the time of his arraignment he entered a plea of guilty and applied for probation. Thereafter his application for probation was denied and he was sentenced to the state prison. Some time later, upon motion of his attorney, his plea of guilty was vacated and he entered a plea of not guilty.* He was tried by a jury and was convicted and again sentenced to the state prison. His motion for a new trial was denied. He has appealed from the judgment and from the order denying the motion for a new trial.

As grounds for his appeal appellant contends that the verdict is contrary to the evidence, that the court committed errors in the admission of evidence and erred in the instructions to the jury.

██ 1. *The sufficiency of the evidence.* Appellant resided with his family, consisting of his wife, two sons and a stepdaughter. The prosecutrix resided with her sister-in-law in the same block in which appellant and his family resided. On the night in question, appellant's stepdaughter, with the con-

---

*This order was made subsequently to the entry of judgment sentencing appellant to the state prison. Section 1018 of the Penal Code provides that a plea of guilty may be withdrawn *before* judgment. The record does not show that the judgment was vacated before the plea of not guilty was entered, or at all. No question as to the regularity of the proceedings in this particular has been raised by respondent and we have given no consideration to the validity of the withdrawal of the plea of guilty or to the jurisdiction of the court to place appellant on trial.

sent of her mother, invited the prosecutrix to spend the night at appellant's house where she arrived about 8 o'clock. The two girls occupied the same bed, appellant's stepdaughter being next to the wall, and the prosecutrix on the outside. Some time after they had retired, appellant came into the girls' room and tickled each of them while they were in bed. Appellant then left the room, returning after an absence of a few minutes when he sat on the side of the bed and committed the act complained of. Appellant's wife came into the room stating that she knew what was going on. Appellant and his wife went into the living room and the latter called the prosecutrix and asked what had happened. After the prosecutrix had related what had occurred, appellant's wife, her daughter and the prosecutrix went to the latter's home, and all of them, with the sister-in-law of the prosecutrix, returned. During this time the prosecutrix was crying. Her sister-in-law asked what had happened. Appellant said that he would let the girl tell her story and then he would tell his. After the prosecutrix had related what appellant had done the latter refused to make any statement and the sister-in-law called the police. Upon the arrival of the officers the prosecutrix, in the presence of the other persons, began to relate what had transpired. The officers took her and her sister-in-law into the kitchen where she completed her statement. They all returned to the living room and one of the officers asked appellant why he had acted in such a manner, to which he replied: "She asked for it. She asked for what she got."

The evidence of the prosecutrix was corroborated by her sister-in-law as to those matters that occurred in her presence. The latter also testified that when she arrived at appellant's house he was lying on the sofa and that his trousers were unbuttoned; that he arose, went into the bathroom, returned and buttoned his trousers. The officers corroborated the evidence of the prosecutrix as to what occurred after they arrived. One of them testified that appellant said that he wanted to telephone to his attorney, and that while they were taking him to jail he said that he would get a good attorney and "beat this rap."

Appellant testifying in his own behalf, admitted that he sat at the foot of the bed which the girls occupied but denied that he committed any lewd or lascivious acts upon the prosecutrix. Appellant's wife testified that when she came into the room the bed clothing did not appear to be disarranged, that

her husband was sitting on the bed on top of the covers, and that his hands were in his lap. She denied having made any remark to the effect that she knew what her husband was doing. Appellant's stepdaughter corroborated the evidence of appellant and that of his wife and stated that she did not see him touch the prosecutrix.

It is clear, as conceded by appellant in his brief, that the evidence for the prosecution is not of the type that can be deemed inherently improbable. When there is a conflict in the evidence it devolves upon the jury to determine its weight and which witnesses should be believed. When the verdict is based on conflicting evidence it will not be set aside if there is substantial evidence supporting it. (*People* v. *Braun*, 14 Cal.2d 1, 5 [92 P.2d 402] ; *People* v. *Thourwald*, 46 Cal.App. 261, 265 [189 P. 124].) An appellate court will view the evidence in the light most favorable to the prosecution. (*People* v. *Ogden*, 41 Cal.App.2d 447, 449 [107 P.2d 50].) A perusal of the record demonstrates the substantiality of the evidence and the correctness of the verdict.

2. *Alleged errors of law occurring at the trial.* Appellant was a witness in his own behalf. The following questions and answers are quoted from his cross-examination and are assigned as error: ''Q. When was it you first said you had nothing to say; you wanted to talk to your attorney? A. When the officer told me he was taking me in. Q. At that time you didn't know what 288 was. Why did you want to talk to an attorney? A. Because I happen to know that while you are in the County Jail you can't use a telephone. Q. You can't use a telephone after you are in the County Jail? A. That is right. Q. How many times have you been in the County Jail? A. Once or twice. Q. You know, as a matter of law, that every prisoner has a legal right to call an attorney? Mrs. Kellogg: I object to that. Mr. Myers: He just stated that, if the Court please. Q. Do you know that or do you not? A. You can make one call out of the booking office and that is all. Q. That is a legal right, isn't it? A. That is what the statement says up there. If you don't happen to have the nickel to make the phone call, you don't make the phone call. Q. You are sure of that? A. Positive. Q. Have you ever tried to make a call from the jail and the officers refused to let you make it? Mrs. Kellogg: Object to that as immaterial. Mr. Myers: If the Court please, these are voluntary statements. The Court: I don't see that it tends to prove or disprove any of the issues, Mr. Myers. Mr. Myers: Very well.''

Appellant contends that the court erred in allowing the admission of the testimony above quoted for the reason that it placed before the jury evidence of other offenses of the accused. There are two answers to this contention: (1) The information as to appellant's former encounters with the law came from him without inquiry from the prosecution. The district attorney's question related to appellant's reason for wanting an attorney, and did not suggest or anticipate an answer indicating that he had previously been in the county jail. There was no attempt to impeach or degrade the witness by showing particular acts of misconduct or prior bad character. Appellant's answer showing that he had knowledge of the rules and procedure of the jail was voluntary. The succeeding questions propounded to him ensued naturally from the witness's unsolicited disclosure. The ignominy, if any, suffered by appellant, resulted from his own freely given statements and not from any act or conduct of the district attorney. (2) There were only two objections to the questions. The first objection did not state a ground on which it was based and appellant did not obtain a ruling on it. The second objection was sustained. ■ If a defendant makes no objection to a question at the trial it is waived and cannot be made for the first time on appeal. (*People* v. *Washburn,* 104 Cal. App. 662, 665 [286 P. 711]; *People* v. *Thourwald,* 46 Cal.App. 261, 270 [189 P. 124]; *People* v. *Godwin,* 123 Cal. 374, 376 [55 P. 1059].) ■ If appellant's counsel did not desire to have his voluntary statements stand in the record against him a motion to strike the answer should have been made, and a failure to make the motion, like the failure to object to a question, waived the right to urge the error on appeal. (*People* v. *Cole,* 141 Cal. 88, 92 [74 P. 547].)

■ 3. *No error is found in the instructions to the jury.* Appellant's contention that error was committed in the instructions is no less attenuated than is his complaint concerning the admission of evidence. His objection that the court failed to give certain instructions that would have been supplementary to those given is disposed of by the fact that he failed to request them. When the instructions given by the court contain a concise and fair statement of the law applicable to the case and a defendant desires further instructions, he is not prejudiced by reason of the failure of the court to give the instructions which he himself failed to propose. (*People* v. *Bryant,* 77 Cal.App. 375, 377 [246 P. 815]; *State*

v. *Acosta,* 49 Nev. 184 [242 P. 316, 319]; *People* v. *Droste,* 160 Mich. 66 [125 N.W. 87, 93]; *State* v. *Lathrop,* 112 Wash. 560 [192 P. 950, 951].)

The court instructed the jury that a violation of section 288 of the Penal Code consists of the act of "touching or fondling, plus a specific intent to arouse, appeal to or gratify the lust, passions or sexual desires of either the accused, or the alleged victim." The jury was further instructed that to constitute the offense it was not necessary that the bare skin of the minor be touched, but that the touching, fondling, rubbing or feeling of the body, members or private parts through the clothing of the minor constituted the offense charged.

Appellant does not object to the form of these instructions, but complains that the court did not go further and define the words "lewd" and "lascivious." It is not necessary to define to the jury every word found in a statute denouncing a crime. It may be conceded that members of a jury have a less intimate knowledge of such a crime as that charged against appellant than have the prosecuting officers and counsel who engage in the defense of such actions, but the words "lewd" and "lascivious" are in sufficiently common usage that it is not essential that lexicographer's definition be read to the jury. It would be redundant to tell the jury that Webster says that "lewd" means "lustful, unchaste" and that "lascivious" means "lewd, lustful." The court was not required to instruct that appellant's acts were lewd and lascivious. The offense charged is sufficiently described in the information that was read to the jury and it is adequately narrated in the evidence and characterized in the instructions given.

The court instructed the jury as follows: "By reason of the fact that charges of the nature involved in this case can easily be made and are often difficult to disprove, I instruct you that it is your duty to examine with caution the testimony of the prosecuting witness. The fact that the charge here made, however, is one difficult to disprove should not deter you from rendering a verdict of guilty in the event that you are convinced by the evidence beyond a reasonable doubt that the defendant is guilty as charged." The first sentence of this instruction fulfills the requirement for the giving of a cautionary instruction in sex cases. (*People* v. *Putnam,* 20 Cal.2d 885, 889 [129 P.2d 367]; *People* v. *Lucas,*

16 Cal.2d 178, 181 [105 P.2d 102, 130 A.L.R. 1485].) Appellant complains of the last sentence in the instruction in which the jury was told that the fact that the charge is difficult to disprove should not deter them from finding appellant guilty if they were convinced from the evidence beyond a reasonable doubt of his guilt. This sentence did not weaken, modify or detract from that portion of the instruction in which they were told to examine with caution the testimony of the prosecuting witness. The two portions of the instruction are not opposed to each other and the last sentence does not neutralize the first. By the language complained of the court did not indicate any opinion of its own as to the guilt or innocence of appellant, but in fact it emphasized the duty of the jury to be convinced beyond a reasonable doubt before returning a verdict of guilty. This instruction is identical with one that was approved in *People v. Arechiga,* 72 Cal.App.2d 238, 240 [164 P.2d 503], as ''an accurate statement of the law of this state on the subject,'' and is substantially the same as that in *People* v. *Currie,* 16 Cal.App. 731, 736 [117 P. 941], concerning which it is there said: ''We think the court went far enough in its cautionary signal to the jury to awaken in their minds the importance of carefully scrutinizing the testimony of the prosecuting witness, especially so, as the court stated the law to be, which defendant does not question, that a conviction could be found on the uncorroborated testimony of the prosecuting witness.''

Appellant assigns as error the refusal of the court to give the following instruction which he requested: ''You are instructed that a charge of this nature is particularly difficult for a defendant to clear himself of. No charge can be more easily made, and none more difficult to disprove. From the nature of the case, the complaining witness and the defendant are generally the only witnesses. The law does not require in this character of a case that the prosecution witness be corroborated but does require that you examine her testimony with caution.'' The language of this proposed instruction adds nothing to the instruction given by the court and quoted above. It is merely a repetition in different language of that which is contained in other instructions given by the court. ''. . . before a judgment may be reversed because of error it must appear from the record that it was prejudicial and caused substantial injury and that a different result would have been probable if the error had not oc-

curred." (*People* v. *Lucas*, 16 Cal.2d 178, 182 [105 P.2d 102, 130 A.L.R. 1485].)

The judgment and the order denying appellant's motion for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.